# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ISRAEL ALVAREZ PEREZ,**

**Plaintiff,**

-vs-                                          **Case No.  6:05-cv-269-Orl-28JGG**

**SANFORD-ORLANDO KENNEL CLUB,**
**INC., JACK COLLINS,**

**Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motions:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S MOTION FOR TAXATION OF ATTORNEY'S FEES AND COSTS (Doc. No. 106)** |
| **FILED:** | **November 14, 2006** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED** in part and **DENIED** in part.

| | |
|---|---|
| **MOTION:** | **DEFENDANT JACK COLLINS SR.'S MOTION FOR TAXATION OF COSTS (Doc. No. 107)** |
| **FILED:** | **November 15, 2006** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

| | |
|---|---|
| **MOTION:** | **DEFENDANT JACK COLLINS SR.'S AMENDED MOTION FOR TAXATION OF COSTS (Doc. No. 119)** |
| **FILED:** | **January 18, 2007** |

**THEREON** it is **RECOMMENDED** that the motion be **STRICKEN** as untimely.

## I.   PROCEDURAL HISTORY

Plaintiff Israel Perez sought to hold Defendants Sanford-Orlando Kennel Club, Inc. ["Kennel Club"], Jack Collins, Sr. ["Collins"], and Collins & Collins d/b/a CCC Racing ["CCC Racing"] liable for failing to pay him overtime wages in violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 216(b) ["FLSA"].  Docket No. 22 (amended complaint).  Counsel Barnett Quinton Brooks represents all Defendants.  After a two-day jury trial, the jury returned a verdict in favor of Plaintiff against Kennel Club in the amount of $2,100, against CCC Racing in the amount of $20,000, and against Collins in the amount of $10,000.  Docket No. 81.

The district court set aside the amount awarded to CCC Racing on the basis that the evidence did not support an award of $20,000, and found, as a matter of a law, that Collins was not Plaintiff's employer.  The district court also directed judgment to be entered in favor of Plaintiff against Kennel Club and CCC Racing jointly and severally in the amount of $2,100, and judgment to be entered in favor of Collins against Plaintiff.  *See* Docket No. 80.  On September 29, 2006, the Clerk entered the judgment, with Plaintiff to recover his "costs of action" from Kennel Club and CCC Racing and

Collins to "recover of [Plaintiff] his costs of action." Docket No. 86 at 1. The parties have filed three motions regarding fees and costs (now before the Court).[1]

### A.  Plaintiff's Attorney's Fees and Costs

On November 14, 2006[2], Plaintiff filed a Motion for Taxation of Attorney's Fees and Costs in which he seeks $33,251 in fees as the prevailing party under the FLSA and $3,099.79 in costs pursuant to 28 U.S.C. § 1920. Docket No. 106. Plaintiff argues that the hourly rates for Plaintiff's four attorneys and three paralegals is reasonable, and claims an hourly rate of: 1.) $280 for attorneys Konstantine Pantas, Charles L. Scalise,[3] and Mary E. Lytle; 2.) $150 for attorney Laura A. Weis; 3.) $105 for paralegal Jon D. Rankin; and 4.) $95 for paralegals B. Alvarez and Nury Pacheco. *Id.* at 3.

Defendants Kennel Club and CCC Racing have filed a memorandum in opposition in which they argue that the $280 hourly rate claimed by attorney Lytle is "excessive and unreasonable" and that counsel has billed matters that are not related to this action. Docket No. 109 at 1. Defendants

---

[1] The Plaintiff's occasional sloppiness and the Defendants' inability to articulate a position based on correct law and procedure has complicated the procedural history and this Court's task in resolving these motions.

[2] Under Federal Rule of Civil Procedure 54(d)(2), "[u]nless otherwise provided by statute of order of the court," a motion for attorney's fees must be made by motion no later than fourteen days after entry of judgment. Fed. R. Civ. P. 54(d)(2)(B). Rule 54 does not require that the parties file a motion for costs, and instead, provides that the Clerk may tax costs "on one day's notice" and that "[o]n motion served within 5 days thereafter, the action of the clerk may be reviewed by the court." Fed. R. Civ. P. 54(d)(1).

In this case, the Clerk entered judgment in this case on September 29, 2006, and Plaintiff did not file his motion for taxation of costs until November 14, 2006. Docket Nos. 86, 107. However, after the Clerk entered judgment, the parties filed numerous post-trial motions, including Defendants' renewed motion for judgment as a matter of law, Defendants' motion for a new trial, and Plaintiff's motion for a motion for reconsideration of the Court's order on the jury verdict, and Plaintiff's motion for award of liquidated damages. *See* Docket Nos. 87, 88, 90, 94, 95. Plaintiff also sought and received an extension to October 11, 2006 to file and respond to Defendants' motions due to a fire in the law firm of Plaintiff's counsel. Docket No. 91. On November 1, 2006, the district court denied all of the pending post-trial motions, declining to order a new trial or alter the judgment. Docket No. 100. On November 14, 2006, thirteen days after the district court's order, Plaintiff filed his motion for attorney's fees and costs. Docket No. 106. The Court finds that in light of the filing of motions that could have altered or set aside the judgment, Plaintiff timely filed his motion for fees and costs.

[3] It is not clear why Plaintiff claims an hourly rate for Pantas and Scalise. Neither attorney expended any time working on this case. *See* Docket No. 106-5.

further argue that an hourly rate of $150 is reasonable for Lytle.  Although Defendants ask the Court

to deny Plaintiff's motion in its entirety, in their memorandum in opposition, Defendants make no

specific argument as to Plaintiff's proposed costs, other than noting that "Plaintiff also seeks costs

amounting to $3,099.79, which includes $411.99 for costs of 'exemplification and copies of papers'"

and that "many of those costs requested are not recoverable under 28 U.S.C. § 1920."  *See id.* at 3.

### B.   Defendant Collins' Costs

On November 15, 2006, Defendant Collins filed a Motion for Taxation of Costs [Docket No.

107], in which he asks that the Court tax costs against Plaintiff in the amount of $4,236.77 pursuant

to 28 U.S.C. § 1920.  *See* Docket No. 107-3 at 1.  According to his proposed bill of costs, Collins

seeks: 1.) $90 for fees of the Clerk, 2.) $1,613.95 for deposition transcripts, 3.) $1,048.53 for copy

costs, and 4.) $1,484.29 for "Other costs" which include the costs of postage, electronic legal research,

hotel, phone, and meals.  *See* Docket No. 107-3.  As support for his motion, Collins attached an

Affidavit of Costs in which Collins' counsel states that he expended $4,236.77 in costs, as detailed

in his proposed bill of costs.  Docket No. 107-2.  Collins also filed invoices from his counsel that list

the breakdown of costs claimed.  Docket No. 107-3 at 2-8.  The invoices also show that they were

"submitted to: Sanford Orlando Kennel Club Attn: Jack Collins, Jr."  *See id.*  Jack Collins, Jr. is not

a party to this case.

Plaintiff opposes Collins' motion, and argues that most of Collins' costs, such as counsel's

dinner and hotel charges during the trial, are not taxable under § 1920.  Docket No. 110.  Plaintiff also

argues that Collins failed to submit adequate documentation for his costs; that the motion failed to

state that the costs were necessarily obtained for use in the case; and that Collins was seeking costs

that were incurred by the other two Defendants, who were not prevailing parties in this action.  *Id.*

On December 14, 2006, the Court ordered the parties to meet and confer in a good faith effort to resolve the pending motions and to file a joint status report on or before January 19, 2007 that states what issues have been resolved and what remains to be resolved. Docket No. 114. Instead of filing a joint status report, Defendant Collins, without receiving leave of the Court, filed an amended motion for taxation of costs on January 18, 2007. Docket No. 119. Collins states that counsel for all parties met in person on January 12, 2007 pursuant to the Court's order, but that they did not resolve their "entire dispute as to fees and costs" and "[a]s such, [Collins], as prevailing party, files this Amended Motion for Taxation of Costs . . ." *Id.* at 1. In his amended motion, Collins seeks $4,236.77 (the same amount of costs as stated in his original motion), and attached the same proposed bill of costs and the same invoices submitted to "Sanford Orlando Kennel Club Attn: Jack Collins, Jr." (not Defendant Collins) as he did with his original motion. *See id.* Collins also submitted an Amended Affidavit in which his counsel states that the costs claimed were "actual and were necessarily incurred in the performance of legal services in this matter." Docket No. 119-3, ¶ 5.

On January 19, 2007, Plaintiff filed a memorandum in opposition to Collins' amended motion for costs, as well as a "Status Report in Accordance with Order Dated December 14, 2006." Docket Nos. 120, 121. In the memorandum in opposition, Plaintiff explains at the January 12, 2007 meeting, Plaintiff's counsel informed Defendants' counsel that Collins had provided inadequate documentation for his motion; that Collins' motion did not include the "'magic' language necessary for an award of costs pursuant to 28 U.S.C. § 1920"; that Collins seeks costs that are not taxable under § 1920; and that Collins seeks costs that were actually incurred by Kennel Club and CCC Racing. *Id.* Plaintiff's counsel also provided Defendants' counsel with case law on taxation of costs pursuant to 28 U.S.C. § 1920. In his memorandum in opposition, Plaintiff argues that instead of complying with the Court's

order to file a joint status report, Collins unfairly used the opportunity to file an amended motion for taxation of costs that is untimely and prejudicial because Collins had the benefit of case law provided by Plaintiff's counsel to amend his motion. Further, Plaintiff notes that Collins failed to comply with Local Rule 3.01(g) in that counsel did not confer with Plaintiff's counsel prior to filing the amended motion for costs. *Id.* at 5.

Plaintiff also filed a status report in which he explains that at the meeting, Defendants' counsel agreed to contact Plaintiff's counsel by the end of the day (January 12, 2007) regarding the joint report required by the Court. Docket No. 121 at 1 n.1. According to Plaintiff, Defendants' counsel instead contacted Plaintiff's counsel on January 16, 2007, and stated that he would contact Plaintiff's counsel by January 18, 2007. On January 18, 2007, Defendants' counsel did not contact Plaintiff's counsel, and instead, filed the amended motion for taxation of costs. *Id.* at 1.

In the status report, Plaintiff further states that, at the meeting, counsel agreed that the number of hours claimed by Plaintiff's counsel should be reduced by 12.2 hours, but that they could not agree on a reasonable hourly rate for attorney Lytle. *Id.* According to Plaintiff, "[t]hus, the issue of a reasonable hourly rate for Ms. Lytle remains as the only issue to be resolved by the Court relating to Plaintiff's Motion for Award of Attorney's Fees and Costs." *Id.* at 2.

## II.   THE LAW

### A.   Attorney's Fees

An award of "reasonable attorneys' fee[s] . . . and costs" is mandatory under the FLSA, 29 U.S.C. § 216(b), if the employer is held liable. Although the court is obligated to award the attorneys' fees, Congress's use of the word "reasonable" confers discretion upon the court to determine the amount of fees to be awarded.

Historically, the federal courts have analyzed demands for attorneys' fees pursuant to *Johnson v. Ga. Highway Express*, 488 F.2d 714 (5th Cir. 1974). *Johnson* set forth twelve factors to be considered in calculating a fee award.[4]  The United States Court of Appeals for the Eleventh Circuit has consistently refined calculation of awards of attorneys' fees to comport with decisions of the United States Supreme Court. *Norman v. Hous. Auth.*, 836 F.2d 1292, 1299 (11th Cir. 1988). *Norman* adopted the lodestar approach for calculating attorneys' fees.  The lodestar approach presumptively incorporates the twelve factors adopted in *Johnson* . *Norman*, 488 F.2d 714. 836 F.2d at 1298-99.   The Eleventh Circuit applies the lodestar approach of *Norman* in determining a reasonable attorneys' fee. *See Camden I Condo. Assoc., Inc. v. Dunkle*, 946 F.2d 768, 772 (11th Cir. 1991); *see also Burlington v. Dague*, 505 U.S. 557, 562 (1992).  Simply stated, the lodestar is the product of the number of reasonable hours expended and the reasonable hourly rate. *Burlington v. Dague*, 505 U.S. 557, 559-60  (1992) citing *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).

1.      Reasonable Hourly Rate

The Court must first determine the reasonable hourly rate. *Duckworth v. Whisenant*, 97 F.3d 1393 (11th Cir. 1996); *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994); *Norman*, 836 F.2d at 1299.  The reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services provided by lawyers of reasonably comparable skills, experience, and reputation.

---

[4]Those twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717 - 9.

*Norman*, 836 F.2d at 1299.   The party seeking attorneys' fees bears the burden of producing

"satisfactory evidence that the requested rate is in line with prevailing market rates," which normally

requires "more than the affidavit of the attorney performing the work." *Loranger*, 10 F.3d at 781,

citing *Norman*, 836 F.2d at 1299.   The court may consider direct evidence of rates for similar services

or opinion evidence about rates.   *Norman*, 836 F.2d at 1299.

  The Eleventh Circuit looks to skill as the ultimate determinate of compensation level because

experience and reputation are a mirror image of skill.   *Id.* at 1300.   Skill is evidenced by an attorneys'

initial case assessment, continuing negotiation and settlement attempts, persuasiveness, and other

fundamental aspects of organization and efficiency.   *Id.* at 1300 - 1301.   Organization means that

counsel plans effective discovery devices and does not use them randomly or for the mere purpose of

going through established routines.   Efficiency means doing exactly what needs to be done in a

minimum time.   *Id.* at 1301.   Legal skill, therefore, correlates to a knowledge of both trial practice and

substantive law.   *Id.*   Although an attorney who must familiarize himself or herself with either aspect

of practice may prove exemplary as an advocate, he or she does not have a right to claim comparable

skill to attorneys whose first actions are directed at the finer points of the case.   *Id.*   Proficiency should

yield efficiency, and the district court has ample discretion to discount the import of counsel's

expertise.   *Varner v. Century Fin. Co., Inc.*, 738 F.2d 1143, 1149 (11th Cir. 1984).   No two attorneys

possess the same skill, therefore the Court must look to the range provided by the evidence, and

interpolate a reasonable market rate.   *Norman*, 836 F.2d at 1300.   In summary, the Court determines

a reasonable rate by assessing the range of fees established in the marketplace, as modified by

reference to an individual attorney's skill.   *Id.* at 1301; *e.g., Duckworth*, 97 F.3d at 1396.

2.    Reasonable Hours Expended

The second step in determining the lodestar is to assess the reasonable number of hours

expended in the litigation. *Norman*, 836 F.2d at 1302.  Inquiry into the reasonable number of hours

focuses on the exercise of "billing judgment" — exclusion of those hours not reasonably billable to

a client irrespective of counsel's skill, therefore the Court must deduct for redundant hours. *Id.* at

1301-02, citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).  A court must not consider an

attorney's skill at this stage as this would constitute a double penalty — the rate would first be

decreased and the hours would then be lowered. *Norman*, 836 F.2d at 1301.

The fee applicant bears the burden of documenting the appropriate number of hours. *Id.* at

1303, citing *Hensley*, 461 U.S. at 437; *United States v. Blue Cross and Blue Shield of Fla., Inc.*, 882

F. Supp. 166, 170 (M.D. Fla. 1995).  Generalized statements concerning reasonableness are of little

or no assistance to the Court, instead proof of the hours dedicated to litigation and any corresponding

objections must be made with sufficient specificity. *Duckworth*, 97 F.3d at 1397 - 98; *Norman*, 836

F.2d at 1301.

Throughout the calculation of the lodestar, the Court remains cognizant that it is itself an

expert on the question, and may consider the request in light of its own knowledge and experience

with or without the aid of witnesses as to value or hours dedicated to litigation. *Loranger*, 10 F.3d

at 781; *Norman*, 836 F.2d at 1303.  Even a contested request for attorneys' fees "should not result in

a second major litigation." *Hensley*, 461 U.S. at 437.  Where the documentation is inadequate, the

district court must still determine a reasonable fee, which it may do without further pleadings or an

evidentiary hearing because the Court itself is an expert. *Id.* at 1303 (quoting *Campbell v. Green*, 112

F.2d 143, 144 (5th Cir. 1940)).

**B.**   <u>**Taxation of Costs**</u>

A prevailing party may recover costs *as a matter of course* unless otherwise directed by the

Court or applicable statute. *See* Fed. R. Civ. P. 54 (d)(1).[5]   Congress, in 28 U.S.C. § 1920, delineated

which costs are recoverable under Rule 54 (d).[6]   The Court has the discretion to award those costs

specifically enumerated in 28 U.S.C. § 1920, and may not tax as costs any items not included in that

statute. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 - 42 (1987); *see also*

*Morrison v. Reichhold Chems., Inc.*, 97 F.3d 460 (11th Cir.1996); *Desisto Coll., Inc. v. Howey-in-the-*

*Hills*, 718 F. Supp. 906, 911 (M.D. Fla. 1989) (declined to follow on other grounds by *EEOC v. W&O,*

*Inc.*, 213 F.3d 600 (11th Cir. 2000)).

To rebut the presumption that the prevailing party receives costs, the losing party "must

demonstrate that there is some fault, misconduct, default or action worthy of penalty on the part of the

prevailing side." *Desisto Coll., Inc.*, 718 F.Supp. at 911 (quotations omitted). Thus, when challenging

---

[5]   Fed.R.Civ.P. 54 (d)(1) provides:

>   Except when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the United States, its officers, and agencies shall be imposed only to the extent permitted by law.  Such costs may be taxed by the clerk on one day's notice.  On motion served within 5 days thereafter, the action of the clerk may be reviewed by the court.

[6]   28 U.S.C. § 1920 provides:

>    A judge or clerk of any court of the United States may tax as costs the following:
>
>   (1) Fees of the clerk and marshal;
>   (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
>   (3) Fees and disbursements for printing and witnesses;
>   (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
>   (5) Docket fees under section 1923 of this title;
>   (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

whether costs are properly taxable, the burden lies with the losing party, unless the knowledge

regarding the proposed cost is a matter "within the exclusive knowledge of the prevailing party." *See*

*id.* at 910 n.1.

### 1.    Fees of the Clerk

Section 1920(1) provides for the taxation of the "Fees of the clerk" as costs.  28 U.S.C.

1920(1).  28 U.S.C. § 1914 lists, in turn, the fees the clerk of the court may charge.  Section

1914(a) provides that:

> [t]he clerk of each district court shall require the parties instituting any civil action,
> suit or proceeding in such court, whether by original process, removal or otherwise,
> to pay a filing fee of $350, except that on application for a writ of habeas corpus the
> filing fee shall be $5.

28 U.S.C. § 1914(a).

### 2.    Costs for Transcripts

Section 1920(2) authorizes the taxation of costs for the "[f]ees of the court reporter for all

or any part of the stenographic transcript necessarily obtained for use in the case."  28 U.S.C.

§1920(2); *EEOC*, 213 F.3d at 620; *see Maris Distrib. Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207,

1225 (11th Cir. 2002).  Even though §1920(2) does not specifically use the word "deposition,"

deposition transcript costs (like costs for other transcripts) are taxable only if the deposition was

"necessarily obtained" for use in the case.  *EEOC*, 213 F.3d at 621.  District courts have great

latitude in determining whether a deposition was "necessarily obtained" for use in the case.

*Newman v. A.E. Staley Mfg. Co.*, 648 F.2d 330, 337 (5th Cir. Unit B June 1981).

Deposition costs of witnesses on a losing party's witness list are generally considered

taxable.  *Maris Distrib. Co.*, 302 F.3d at 1225.  In addition, deposition costs are taxable even if a

prevailing party's use of a deposition is minimal or not critical to that party's ultimate success, unless the losing party demonstrates that the deposition was not related to an issue present in the case at the time of the deposition. *EEOC*, 213 F.3d at 621. The parties need not have used the deposition at trial. *Id*. Depositions costs of witnesses are thus taxable even if the prevailing party successfully moved to exclude from trial the testimony of those witnesses. *Id*. at 622.

Videotaped depositions are taxable as any other deposition cost pursuant to section 1920(1). When a party notices a deposition to be recorded by non-stenographic means, and the other party does not raise an objection at time as to the method of recording the deposition, the cost of the deposition should be awarded as a deposition cost. *Morrison*, 97 F.3d at 464-65.

3.   Copy Costs and Other Costs

Section 1920(4) authorizes the taxation of costs for "copies of papers necessarily obtained for use in the case." 28 U.S.C. §1920(2)**;** *EEOC*, 213 F.3d at 623. In evaluating copying costs, the Court should consider "whether the prevailing party could have reasonably believed that it was necessary" to copy the papers. *EEOC*, 213 F.3d at 623. While the burden generally lies with the losing party to demonstrate that costs should not be taxed, with copying costs, the prevailing party bears the burden of proving that the copies were necessary because they are generally costs "within the exclusive knowledge" of the prevailing party. *Desisto Coll., Inc.,* 718 F.Supp. at 910 n.1. Copying costs, like deposition costs, are recoverable even if the papers at issue were not used at trial, or even if the papers were never submitted to the Court or opposing counsel. *EEOC*, 213 F.3d at 623. In general, copies "attributable to discovery" are recoverable under § 1920(4). *Id*. (quoting *Desisto Coll., Inc.,* 718 F.Supp. at 913). However, "[g]eneral copying, computerized legal research, postage, courthouse parking fees and expert witness fees [that exceed the limits of

28 U.S. C. § 1821] are clearly nonrecoverable" pursuant to § 1920.  *Duckworth v. Whisenan*, 97

F.3d 1393, 1399 (11th Cir. 1996).

## III.   **APPLICATION**

### A.   **Plaintiff's Motion for Attorney's Fees and Costs**

As stated earlier, Plaintiff seeks $33,251 in fees as the prevailing party under the FLSA and

$3,099.79 in costs pursuant to 28 U.S.C. § 1920.  Docket No. 106.  Plaintiff claims an hourly rate

of: 1.) $280 for attorneys Konstantine Pantas, Charles L. Scalise, and Mary E. Lytle; 2.) $150 for

attorney Laura A. Weis; 3.) $105 for paralegal Jon D. Rankin; and 4.) $95 for paralegals B.

Alvarez and Nury Pacheco.  *Id.* at 3.  Defendants argue that Plaintiff included an extra 12.2 hours

of time for Alvarez, Lytle, and Weis, and object to $280 as a reasonable hourly rate for attorney

Lytle.  Docket No. 109.  Plaintiff states that he agrees to reduce the number of hours claimed by

12.2, and that the only issue before the Court is attorney's Lytle's reasonable hourly rate.  *See*

Docket No. 121 at 3.

As support for Lytle's hourly rate of $280, attorney Pantas submitted an affidavit in which

he states that Lytle has over eleven years of litigation experience and has practiced "exclusively in

employment law" for nine years.  Docket No. 106-2 at 1. ¶ 5.  He further attests that he is familiar

with the rates charged by attorneys with similar experience in Central Florida, and that the hourly

rate of $280 is reasonable.  *Id.*

Attorney Jill S. Schwartz (who is not Plaintiff's counsel) also submitted an affidavit in

support of Plaintiff's motion.  Docket No. 106-3.  In her affidavit, Schwartz states that she litigates

employment cases; is the founding and managing partner of a law firm in Winter Park, Florida;

and has served on a number of employment law and labor-related councils and committees.  *Id.* at

2, ¶¶ 4-5.  She states that she reviewed the "extensive" case file (including pleadings and the motion for attorney's fees and costs now before the Court), the billing records of Plaintiff's counsel, and the background and experience of Plaintiff's counsel; and attests that "[b]ased on my knowledge of prevailing attorney rates in central Florida, it is my opinion that $280 per hour is a reasonable hourly rate for an attorney possessing the skills and experience of . . . Lytle . . ."  *Id.* at 4, ¶ 15.  Schwartz also states that from her experience litigating employment cases, "[d]ue to the nature of these actions and the fact that plaintiffs are often of modest means and unemployed, they carry an unusually high degree of financial risk for the attorney who represents employment plaintiffs."  *Id.* at 3, ¶ 11.  Schwartz further opines that the hourly rates for the attorneys and paralegals and all of the fees sought by Plaintiff are reasonable.  *Id.* at 3-4.

Defendants, in their memorandum in opposition, state generally that Plaintiff did not provide the Court with specific and detailed evidence in order to determine an hourly rate; that Lytle's rate is "excessively high"; and that "Defendants do not dispute a rate of $150 per hour is reasonable."  Docket No. 109 at 3.  Defendants also state:

> Attorney's fees under the Equal Access to Justice Act ("EAJA") are the standard for recoverable fee amounts and are based on 'prevailing market rates for the kind and quality of services furnished.'  28 U.S.C. § 2412(d)(2)(A).  The EAJA attorney's fees rate cap at the end of August 2005 was $161.68.  Ms [sic] Lytle's rate should not exceed that rate.

*Id.*

Defendants' objection to the hourly rate is confusing.  Defendants state that $150 is a reasonable hourly rate, but also state that $161.68 is a reasonable hourly rate under EAJA.  It is unclear why Defendants cite to an attorney's fees statute that is unrelated to the FLSA, and why Defendants picked $150 and/or $161.68 as a reasonably hourly rate for Lytle.  Nonetheless, the

party seeking attorneys' fees bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates. Despite submitting the lengthy affidavit by Schwartz, Plaintiff failed to identify the name of any other attorney of comparable skills, experience, and reputation whose hourly rate is $280. Plaintiff further did not cite any case in which a court approved a $280 hourly rate for Lytle or an attorney of comparable skill, experience, and reputation. Plaintiff did not produce satisfactory evidence in support of his motion.

The Court has considered the pleadings and filings in this action (including Defendants' motion for summary judgment and Plaintiff's response), as well as the Court's own knowledge of and experience with the attorneys in this case and the market rates in Orlando for similar FLSA actions. The Court, acting as its own expert (in part due to Plaintiff's inadequate evidence and Defendants' insufficient objection), finds that an hourly rate of $200 is appropriate for Lytle. The Court therefore recommends that the amount of attorney's fees be reduced accordingly.

Additionally, although Plaintiff claims that the only issue before the Court is Lytle's hourly rate, neither party specified the amount to deduct from $33,251 (the amount of attorney's fees originally claimed by Plaintiff) in accordance with the parties' agreement that Plaintiff claimed an excess of 12.2 hours of time. In the status report, Plaintiff states that "Plaintiff and Defendant have agreed that the number of hours submitted by Plaintiff should be reduced by the amounts (12.2 Hours) set forth in Defendant's Response (Doc. 109, Pages 3-5)." Docket No. 121 at 2 (parentheticals in original) In their memorandum, Defendants listed each entry of excessive time claimed by paralegal Alvarez and attorneys Lytle and Weis, and at the bottom of the list, Defendants state "Total: 12.2 hours." *See* Docket No. 109 at 3-5. Defendants' list of hours, however, does *not* total **12.2 hours**, and instead, amounts to 6.5 hours for Alvarez, 1.4 hours for

Weis, and 0.4 hours for Lytle – a total of **8.3 hours**. *See* Docket No. 109 at 3-5. Plaintiff claims varying hourly rates for Alvarez, Weis, and Lytle; neither party explains what rate to use for the extra 3.9 hours to which Defendants object. The parties seem to expect this Court to calculate amounts that they should have correctly and clearly presented to the Court.

It is recommended that the hours be reduced by 8.3 according to the undersigned's own calculation. The reduced hours and hourly rates are as follows: 1.) Lytle expended 78.9 hours at an hourly rate of $200 for a total of $15,780; 2.) Weis expended 42.9 hours at an hourly rate of $150 for a total of $6,435; and 3.) paralegals, including Alvarez, expended 9 hours at an hourly rate of $95 for a total of $855. *Compare* Docket No. 106-2 at 2, ¶ 10. Defendants do not object to paralegal Rankin's hours or hourly rate, so his 27.9 hours and $105 hourly rate ( for a total of $2,929.50) remain unchanged. The undersigned therefore recommends that Plaintiff's Motion for Taxation of Fees and Costs [Docket No. 106] be **GRANTED** in part and **DENIED** in part. Plaintiff should recover from Defendants Kennel Club and CCC Racing fees in the amount of $25,999.50 and costs in the amount of $3,099.79.

### B. Collins' Motions for Taxation of Costs

In his original and amended motions for costs, Collins asks the Court to tax costs against Plaintiff in the amount of $4,236.77. *See* Docket No. 107-3 at 1. According to his proposed bill of costs, Collins seeks: 1.) $90 for fees of the Clerk, 2.) $1,613.95 for deposition transcripts, 3.) $1,048.53 for copy costs, and 4.) $1,484.29 for "Other costs" which include the costs of postage, electronic legal research, hotel, phone, and meals. *See* Docket No. 107-3.

First, Collins' amended motion is untimely and inappropriate. Collins' counsel failed to confer with opposing counsel (as required by Local Rule 3.01(g)) or even *inform* opposing counsel

prior to filing the amended motion for costs.  Additionally, Collins failed to comply with the Court's order to file a joint status report, and instead, used the opportunity to file what is essentially a reply to Plaintiff's memorandum in opposition without first receiving permission of the Court.  *See* Local Rule 3.01(c).  Collins' Amended Motion for Taxation of Costs [Docket No. 119] should therefore be **STRICKEN**.

        1.      <u>Fees of the Clerk</u>

Next, in his original Motion for Taxation of Costs [Docket No. 107], Collins seeks numerous costs that are not taxable under 28 U.S.C. § 1920.  Collins claims $90 for "Fees of the Clerk."  Docket No. 107-3 at 1.  However, Plaintiff, not Collins, paid the $250 filing fee in this action.  According to the invoices, Collins' counsel paid $90 in "e-filing fee[s]" for "Filing & Research on PACER."  Docket No. 107-3 at 4, 7-8.  These fees are not taxable under 28 U.S.C. §§ 1914(a), 1920(1), and Collins' request for $90 in "Fees of the Clerk" should be **DENIED**.

        2.      <u>Other Costs</u>

Collins also claims $1,484.29 in "Other costs."  Docket No. 107-3 at 1.  As "Other costs," Collins includes the costs of postage, legal research, office supplies, phone service, computer software, as well as costs incurred during the trial, including costs for meals, hotel, and travel.  *Id.* at 8.  None of these costs are taxable under § 1920.  Collins' attempt to claim these costs is entirely without merit.  Collins' motion for "Other costs" should be **DENIED**.

        3.      <u>Copy Costs</u>

Collins also seeks $1,048.63 in copy costs, which Collins apportions as follows: 1.) $508.45 in "Scanning," 2.) $27 in "Copies," 3.) $4 in "Copies", and 4.) $509.08 in "Legal Graph."

*See* Docket No. 107-3 at 8.  Some of these costs are not costs incurred in making photocopies.  In counsel's invoices, he lists the $508.45 cost as "Scanning Exhibits in response to Motion to Compel" (*id.* at 2); the $4 cost as "Copies Internet Document Order" (*id.* at 6); and the $509.08 cost as "Delivery Cost Delivery & Design Cost Insight Legal Graphic LA, CA Invoice #06-118."

Even assuming, however, that the $4 for "Copies Internet Document Order" was the cost of photocopying documents, Collins failed to explain or support the $27 and $4 charges for copy costs.  Although the Court does not normally demand a record of what was copied or the rate paid, Collins failed to make even a minimal showing that these copy costs were necessary to the case. *See Duckworth v. Whisenan*, 97 F.3d 1393, 1399 (11th Cir. 1996) ("Plaintiff's affidavits appear to include costs such as general copying . . . which are clearly nonrecoverable").  Collins further failed to show that these copy costs were incurred by Collins, not Kennel Club or CCC Racing. As the only evidence for the costs claimed, Collins submitted vague and confusing invoices that fail to show why these costs are attributable to Collins.  In fact, it appears that counsel submitted these invoices to Kennel Club (a defendant who did not prevail and may not recover costs) and to the attention of Jack Collins, Jr. (who is *not* a party to this case).  The undersigned therefore recommends that Collins' request for copy costs be **DENIED**.

4.    Deposition Costs

Collins also seeks $1,613.95 in deposition costs.  *Id.* at 1.  Counsel's invoices, however, only list $1,226.45 in "Deposition Costs for [blank]."  *Id.* at 3.  Counsel's breakdown of costs lists $1,226.45 for the "Court Reporter."  *Id.* at 8.  Under the line for "Court Reporter," counsel listed $1,226.45 for "Depo Costs" and $387.50 for "Depo Costs."  *Id.*  Collins' claim for depositions costs is utterly unsupported and insufficient.  He failed to state which witnesses were deposed, or

provide any explanation or support for the amount claimed.  Again, it appears that these "Depo

Costs" were listed on invoices to Kennel Club, not Collins.  His request for deposition costs

should be **DENIED**.

**IV.**   **CONCLUSION**

Collins' motion for $90 for "Fees of the Clerk," $1,484.29 for "Other [C]osts," $508.45 in

"Scanning," and $509.08 in "Legal Graph" should be **DENIED**.  Those costs are not taxable under

§ 1920.

Costs for copies and depositions, *when properly supported and documented*, are taxable

under § 1920.  The Court does not generally require that prevailing parties provide *extremely*

detailed explanations or support for the costs claimed, and might ordinarily recommend that

Collins' motion for taxable copy and deposition costs be denied without prejudice.  However,

Collins did not attempt to make even a minimal showing that he is entitled to these costs.  Collins

failed to: 1.) state what documents were copied, the rate paid for photocopies, and why the copies

were reasonably necessary to Collins' case; 2.) state which witnesses were deposed and why the

depositions were reasonably necessary to Collins' case; 3.) explain and provide support for why

these copy and depositions costs are attributable to Collins and not the other two Defendants who

were not prevailing parties in this case; and/or 4.) file invoices or receipts (other than those of

counsel) for the copy and deposition costs.  The undersigned therefore recommends that Collins'

Motion for Taxation of Costs [Docket No. 107] be **DENIED** in its entirety and *with* prejudice.

Collins' sloppiness should not entitle him to yet another examination by this Court.[7]

Accordingly, it is **RECOMMENDED**:

1.)   Plaintiff's Motion for Taxation of Attorney's Fees [Docket No. 106] should be

**GRANTED** in part and **DENIED** in part.  Plaintiff should recover from

Defendants Kennel Club and CCC Racing fees in the amount of $25,999.50 and

costs in the amount of $3,099.79;

2.)   Defendant Collins' Motion for Taxation of Costs [Docket No. 107] should be

**DENIED**;

3.)   Defendant Collins' Amended Motion for Taxation of Costs [Docket No. 119]

should be **STRICKEN**.

Failure to file written objections to the proposed findings and recommendations contained

in this report within ten (10) days from the date of its filing shall bar an aggrieved party from

attacking the factual findings on appeal.

Recommended in Orlando, Florida on February 20, 2007.

JAMES G. GLAZEBROOK
UNITED STATES MAGISTRATE JUDGE

---

[7]In fact, by filing his amended motion for costs, Collins had a second opportunity to support the costs claimed, but again, failed to make a minimal showing that he is entitled to the costs sought.  His amended motion and exhibits in support of the amended motion are nearly identical to his original motion and exhibits.  *Compare* Docket No. 107 *with* Docket No. 119.

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy